IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **JOSHUA THOMAS HILL,** | : | **MOTION TO VACATE** |
| Movant, | : | **28 U.S.C. § 2255** |
| | : | |
| v. | : | **CRIMINAL INDICTMENT NO.** |
| | : | **1:12-CR-0285-WSD-AJB-1** |
| **UNITED STATES OF AMERICA,** | : | |
| Respondent. | : | **CIVIL FILE NO.** |
| | : | **1:16-CV-1476-WSD-AJB** |

**UNITED STATES MAGISTRATE JUDGE'S**
**FINAL REPORT AND RECOMMENDATION**

Movant has filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct his federal sentence entered in this Court under the above criminal docket number. The matter is before the Court on the motion to vacate, [Doc. 435], Respondent's response, [Doc. 442], and Movant's reply, [Doc. 450]. For the reasons discussed below, Movant's motion to vacate and a certificate of appealability (COA) are due to be denied.

**I.    Background**

The grand jury sitting in the Northern District of Georgia charged Movant and two co-defendants, Fabian Terran Murray and Clinton Saintvil, on one count of conspiring to commit sex trafficking of children, in violation of 18 U.S.C. §§ 1591 and 1594(c), and charged Movant on three counts of sex trafficking of children and one

count of being a felon in possession of a firearm. (Second Superseding Indictment, ECF No. 201.)

Represented by Andrew C. Hall, Movant decided to plead guilty to Count One, the conspiracy count. (Guilty Plea and Plea Agreement, ECF No. 324-1.) On April 18, 2014, Movant appeared for his plea hearing and took an oath that he would testify truthfully. (Plea Hr'g Tr. at 3, ECF No. 362.) The Court explained to Movant the rights that he was giving up by pleading guilty, including the right to go to trial and have the government prove his guilt beyond a reasonable doubt on all of the elements of the charged crime. (*Id*. at 5-11). Movant, under oath, stated that he understood and willingly gave up those rights. (*Id*.)

In the plea agreement, which was presented to the Court, the parties agreed as follows. Movant agreed that he was giving up his trial rights and the right to pursue any affirmative defenses, that his maximum term of imprisonment was life, and that the Court could impose up to the maximum term. (*See* Guilty Plea and Plea Agreement at 1-3.) The government agreed that all remaining counts against Movant would be dismissed, that it would bring no further criminal charges against Movant related to the charge to which he was pleading guilty, that it would recommend a 180-month term of imprisonment, and that it would recommend that Movant receive an acceptance-of-

responsibility adjustment. (*Id*. at 4-5.) Movant agreed that the probation office and the Court could still consider his underlying conduct in the dismissed counts in calculating his guidelines range and a reasonable sentence. (*Id*. at 4.) Movant voluntarily and expressly waived the right to appeal or collaterally attack his conviction and sentence, with exceptions for appeal of an upward departure from the sentencing guidelines range or a sentence above the government's recommended 180-month sentence. (*Id*. at 14.)

At the hearing, the government reviewed the plea agreement in detail and stated among other things that "[Movant] understands that before imposing sentence, the Court will be required to consider the sentencing guidelines, and that the Court has discretion to depart from the guidelines and the Court may impose the statutory maximum, and that no one at this time can predict his exact sentence." (Plea Hr'g Tr. at 12-21.) Movant confirmed that the government had accurately reviewed the plea agreement and further stated that he had reviewed the agreement with his counsel. (*Id*. at 21.)

The Court asked Movant if anyone had forced or threatened him to plead guilty, and Movant stated, "No, sir." (*Id*. at 22.) The Court asked Movant if anyone had told him that if he did not plead guilty further charges would be brought or some other

3

adverse action would be taken, and Movant stated that no one had. (*Id*.) The Court asked Movant if anybody had made any promises other than those in the plea agreement or if anybody had promised "what actual sentence" he would receive, and Movant stated that no one had. (*Id*.) The Court asked Movant, "has anybody even suggested that you not tell me the complete truth today?" (*Id*.). Movant responded, "No, Sir." (*Id*.) Counsel additionally stated that, although the government had made a sentencing recommendation, counsel had not promised Movant a specific sentence. (*Id*. at 24.) The Court then asked Movant whether he had received sufficient time to think about his decision to plead guilty and to discuss it with counsel and whether he was satisfied with counsel, and Movant responded affirmatively. (*Id*. at 27-28.)

The government then went over the elements required for a conviction under Count One – (1) that Movant and at least one other person came to a mutual understanding to try and accomplish an unlawful plan, (2) that Movant willfully joined in knowing the unlawful purpose of the plan, and (3) that the object of the plan was to "knowingly and affecting interstate commerce, harbor, transport, provide, obtain, or maintain by any means A.C., O.M., and M.Q. while knowing or in reckless disregard of the fact that A.C., O.M., and M.Q. had not attained the age of 18 years old and would be caused to engage in a commercial sexual act." (*Id*. at 27.) Movant stated that he

4

understood, and, on further questioning by the Court, confirmed that he knew that he was subject to up to life in prison based on his pleading guilty to Count One. (*Id.*) The Court continued, "do you understand that if I believe imposing the maximum authorized punishment is the fair and just and right thing to do in your case, that I'm authorized to do that? Do you understand that?" (*Id.* at 29.) Movant responded, "Yes, Sir." (*Id.*)

The Court explained the guidelines, reviewed Movant's appeal waiver, and then, again, went over the fact that the government's sentencing recommendation was only a recommendation – "it could then be that . . . I'll determine that some of these recommendations I might not agree with. I might not agree with 180 months. I might not agree with full acceptance of responsibility credit. And if I determine that it's not appropriate to follow the recommendations, then I can reject both of them if I think that that's the right thing to do. Do you understand that? You understand that?" (*Id.* at 38.) Movant responded, "Yes, Sir." (*Id.*)

The government then reviewed the facts that it would have established at trial. as follows –

> [Movant] conspired with co-defendants . . . in transporting three 14-year-old girls for the purpose of causing the minors to engage in commercial sex acts. Specifically, [Movant, Murray, and Saintvil]

5

> transported A.C. and O.M., and [Movant] and Saintvil transported M.Q., who [Movant] knew were all under the age of 18 years old, to hotels involved in interstate commerce in Marietta, Georgia, where [Movant] and Murray caused A.C. and O.M. to engage in prostitution. The men used Saintvil's vehicle to transport the girls for the purpose of prostitution, and [Movant] and Murray solicited clients for the girls by using advertisements on the internet cite [sic]. Saintvil's wife, . . . identified in the indictment as N.V., an unindicted co-conspirator, assisted [Movant] and Murray in creating internet advertisements and arranging clients for the girls. And based on these facts the parties agree that [Movant] knowingly and willfully agreed with Mr. Murray and Saintvil to harbor, transport, provide, obtain, and maintain A.C., O.M., and M.Q.; and that [Movant] did so knowing that A.C., O.M., and M.Q. were under the age of 18 years old and would be caused to engage in commercial sex acts; that the conspiracy involved use of internet advertisements of A.C., O.M., and M.Q. in locations involved in interstate commerce.

(*Id*. at 41.) Movant affirmed to the Court that he had listened carefully to the government's review of the evidence, that it accurately described what he had done and his knowledge of the victim's ages, that he had known that he was doing something illegal, and that he was guilty of the crime as charged. (*Id*. at 42.) The Court asked Movant whether there was anything as stated by the government that he disagreed with, and Movant stated that there was not. (*Id*.) The Court accepted Movant's plea of guilt as knowing and voluntary. (*Id*. at 44.)

At sentencing, the Court determined that Movant's offense level was thirty-six and that his guidelines range was 235-293 months. (Sentencing Tr. at 42,

6

AO 72A
(Rev.8/82)

ECF No. 393.) The Court stated that although it was unsure about the aggravated nature of the case it was sure about Movant's actions – "what you did personally, the satisfaction you sought individually along with Mr. Murray, and ultimately the callousness with which you offered these young girls to others." The Court imposed a 192-month term of imprisonment, less than the guidelines range but more than the government's recommended sentence. (*Id.* at 71.) The government clarified after sentencing that it had informed Movant's counsel before sentencing that Movant would be required to register as a sex offender and that it understood counsel had discussed the matter with Movant before sentencing, which counsel confirmed. (*Id.* at 83.) The Court asked if there was anything else to cover, and both parties agreed that there was not. (*Id.*) On July 17, 2014, the Court entered the judgment against Movant. (J., ECF No. 372.)

Movant appealed and challenged the sentencing enhancements based on use of a computer to facilitate the crime and his supervisory role in the offense. (*See* USCA Op. at 2, ECF No. 407.) On April 7, 2015, the Eleventh Circuit Court of Appeals rejected Movant's challenges and affirmed the judgment against him. (*Id.*) Movant now seeks collateral relief under § 2255. (Mot. to Vacate, ECF No. 435.)

AO 72A
(Rev.8/82)

**II.    28 U.S.C. § 2255 Standard**

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255. Collateral relief, however, is limited.  "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted," *United States v. Frady*, 456 U.S. 152, 164 (1982), and it is the movant's burden to establish his right to collateral relief, *Rivers v. United States,* 777 F.3d 1306, 1316 (11th Cir.), *cert. denied*, _ U.S. _, 136 S. Ct. 267 (2015).

Section 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation marks omitted).  Thus, a constitutional claim of ineffective assistance of counsel generally is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts.  *See Massaro v. United States*, 538 U.S. 500, 505-09 (2003).

AO 72A
(Rev.8/82)

"An evidentiary hearing is not required when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.' " *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting § 2255). That is the case here, as shown in the discussion below.

### III.   Discussion

Movant raises the following grounds for relief – counsel was ineffective during plea negotiations and at sentencing for failing to argue sufficiently that he should receive the 180-month agreed upon sentence. (Mot. to Vacate at 2.) Movant states that he has shown counsel was deficient and that " 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " (*Id.* at 3 (citing *Fields v. Attorney Gen. of State of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992)).) Movant also states that, but for counsel's deficiencies, he would have received the agreed upon 180-month sentence. (*Id.* at 4.) Movant concludes, "Petitioner hereby prays this Honorable Court Grant the first 180 month sentence, retract the 192 month imposed sentence and leave the remainder of plea agreement as is and agreed upon . . . ." (*Id.* at 4.)

The government responds that Movant has failed to show that his guilty plea was unknowing or involuntary or that counsel was ineffective at sentencing. (Resp't Resp. at 9-16, ECF No. 442.)

Movant replies that counsel misled him by (1) telling Movant that under the plea agreement the government would not be able to use "the gang name or the gun" against him when he "was not arrested for any gang name and the gun wasn't the severity, the sex trafficking was";[1] (2) failing to explain to Movant that if he signed the agreement the government would not use the girls' statements at trial; and (3) failing to inform him until the end (after he pleaded guilty) that he would have to register as a sex offender. (Mov't Reply at 2, 4, ECF No. 450.) Movant further states that he did not know that the girls were underage and that counsel told him that to get the plea deal he had to "make it believable" and "just stick with what the prosecutor was saying." (*Id*. at 4.) Movant states that counsel misled him into agreeing to the guilty plea and that, if he had not signed the plea agreement, he would have proceeded to trial and the result would have been different. (*Id*. at 3-4.)

---

[1] Movant does not explain what he means by use of "the gang name" against him, and his unexplained statement fails to bring into question counsel's performance or his guilty plea and is not further addressed.

10

Under the Sixth Amendment, a defendant has the right to "reasonably effective" legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him. *Id.* at 690-92; *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000) (stating that court may resolve an ineffective assistance claim based on either prong). Under the first prong, a petitioner must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Under the second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The habeas petitioner has the burden of affirmatively proving prejudice, and a "conceivable effect on the outcome of the proceedings" does not show prejudice. *Wood v. Allen*, 542 F.3d 1281, 1309 (11th Cir. 2008) (quoting *Strickland*, 466 U.S. at 693) (internal quotation marks omitted).

To succeed on a claim that a guilty plea was obtained in violation of the Sixth Amendment right to counsel, a movant must show that "(1) counsel's advice was

11

deficient; and (2) 'but for counsel's errors, [there is a reasonable probability that] he would not have pleaded guilty and would have insisted on going to trial.' " *Lynch v. Sec'y, Fla. Dep't of Corr.*, 776 F.3d 1209, 1218 (11th Cir. 2015) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)), *cert. denied*, _ U.S. _, 136 S. Ct. 798 (2016). A movant's "bare allegation that he would not have pleaded guilty is insufficient to establish prejudice[.]"  *Roach v. Roberts*, 373 Fed. Appx. 983, 985 (11th Cir. Apr. 20, 2010) (citing *United States v. Campbell*, 778 F.2d 764, 768 (11th Cir. 1985)).  "[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)) (internal quotation marks omitted).  In considering the validity of a guilty plea, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. . . [S]olemn declarations in open court carry a strong presumption of verity." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216-17 (11th Cir. 2014) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)) (internal quotation marks omitted).

AO 72A
(Rev.8/82)

Movant's challenge to his guilty plea is confusing and contradictory. Movant (1) uses a quote from *Fields* to briefly state that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty; (2) concludes by asking the Court to resentence him to 180 months and "retract the 192 month imposed sentence and leave the remainder of plea agreement as is and agreed upon," (Mot. to Vacate at 4); and (3) in his reply states that but for counsel having misled him, he would not have pleaded guilty but proceeded to trial. To the extent that Movant intends to challenge his guilty plea, his challenge fails.

Movant's plea agreement and the guilty plea hearing show that Movant was carefully and fully advised of his rights, show that the Court was not bound by the government's 180-month sentencing recommendation, and support the Court's finding that Movant's guilty plea was knowing and voluntary.

Further, the matters that Movant raises in his reply do not bring into question the validity of his guilty plea. Movant fails to show that counsel was incorrect in advising him that his guilty plea would foreclose the government from pursuing the gun charge (Count Five). The government in the plea agreement in fact agreed that all remaining counts against Movant would be dismissed. (Guilty Plea and Plea Agreement at 4-5.) Movant's assertion – that counsel misled him by failing to explain that if he signed the

13

agreement the government *would not use the girls' statements at trial* – fails because it was adequately explained to Movant that if he pleaded guilty *he would not go to trial*, and thus the girls' statements would not be used at trial. Movant's claim that he did not know that the girls were underage is affirmatively contradicted by the record. (*See* Plea Hr'g Tr. at 27, 41-42.) Movant's claim that counsel told him to state anything less than the truth also is affirmatively contradicted by the record. (*Id*. at 22.)

Additionally, Counsel's alleged failure before the plea to advise Movant on sex offender registration does not show ineffective assistance that rendered Movant's guilty plea invalid. Generally, the Sixth Amendment does not include a right to be advised in regard to the collateral consequences to pleading guilty unless those consequences are particularly severe and intimately related to the criminal process, such as the risk of deportation. *See Chaidez v. United States*, _ U.S. _, _, 133 S. Ct. 1103, 1110 (2013) (discussing *Padilla*, 559 U.S. 356); *Bauder v. Dep't of Corr. State of Fla.*, 619 F.3d 1272, 1275 (11th Cir. 2010) (holding that counsel was ineffective for affirmatively misrepresenting to defendant that his guilty plea would not expose him to civil commitment after he completed his sentence). In holding that counsel is required to advise a client on the collateral consequence of deportation,

14

AO 72A
(Rev.8/82)

> [t]he *Padilla* court stressed the severity of deportation as a sanction, describing it as "the equivalent of banishment or exile," . . . and noted that the Supreme Court had "previously recognized that '[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence[.]' "

*White v. Jones*, No. 1:11CV773, 2014 WL 1757365, at *4 n.9 (M.D.N.C. Apr. 30, 2014) (alterations in original) (citing *Padilla*, 559 U.S. at 368, 373). The same concerns do not apply to the collateral consequence of sex offender registration. *See id.*; *see also Dickson v. United States*, No. 5:10-CR-50124, 2016 WL 2659602, at *4 (W.D. Ark. May 9, 2016) ("The failure to advise Dickson as to the possible registration requirements of the [Sex Offender Registration Act (SORA)] did not constitute ineffective assistance . . . ."); *but see Taylor v. State*, 304 Ga. App. 878, 882, 698 S.E.2d 384, 388 (2010) (finding that professional norms required advising a client in regard to sex offender registration and that counsel was deficient for failing to do so).[2]

---

[2] The Court is aware of no binding Eleventh Circuit decision that categorizes sex offender registration as on par with deportation. *See Jackson v. United States*, 463 Fed. Appx. 833, 835 (11th Cir. Mar. 8, 2012) (remanding and not deciding whether counsel was ineffective for *mis*advising defendant in regard to sex offender registration). In any event, Movant does not allege that counsel misadvised him, but only that counsel did not advise him that the conviction rendered him subject to sex offender registration.

15

Movant does not allege that counsel affirmatively misrepresented to him that sex offender registration would not apply. Further, based on the marked difference in severity between a civil registration requirement and banishment/exile from the United States, it does not appear that counsel performed in a constitutionally deficient manner by failing to advise Movant on the collateral consequences of sex offender registration. *See White*, 2014 WL 1757365, at *4 n.9. Additionally, the fact that Movant remained silent and did not inform the Court of his concern when the issue of sex offender registration was discussed at sentencing weighs against finding that different advice by counsel would have changed Movant's decision to plead guilty, i.e., weighs against finding prejudice.

Moreover, Movant does not show prejudice in that, if counsel had properly informed him on sex offender registration before the guilty plea, it would have been apparent that registration would apply based on a guilty plea to Count One or on conviction to any of the four sex-trafficking-of-minors charges on which Movant would have been required to go to trial. Movant does not show that, had he been aware of sex offender registration, it would have been rational for him to reject the guilty plea and proceed to trial on all charges, including the firearm charge, risking a greater sentence, while still risking the same collateral consequences. *See Gutierrez v. United States*,

16

560 Fed. Appx. 924, 927 (11th Cir. Mar. 26, 2014) (affirming district court decision that even if the movant was not aware of deportation consequences it would not have been rational for him to reject the plea bargain).

Movant significantly benefitted from the plea agreement. The government agreed that the remaining four charges against Movant would be dismissed; that it would bring no further criminal charges against Movant related to the charge to which he was pleading guilty; that it would recommend that Movant receive an acceptance-of-responsibility adjustment; and that, although Movant was facing up to life in prison, it would recommend a 180-month term of imprisonment. Movant's ambiguous contentions in his § 2255 motion and reply show no rational reason for rejecting the plea bargain that he entered into.

Further, Movant sets forth no valid argument that counsel could or should have raised to convince the Court that he should have received the 180-month recommended sentence or that would have had a reasonable chance of changing the sentencing outcome, which was significantly below Movant's guidelines range.

## IV. Certificate of Appealability (COA)

Under Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the

applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." The Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Melton v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d 1234, 1236 (11th Cir. 2015) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted), *cert. denied*, _ U.S. _, 136 S. Ct. 324 (2015).

It is recommended that a COA is unwarranted because it is not debatable that Movant fails to show that his counsel provided ineffective assistance in regard to his decision to plead guilty or in regard to his sentencing. If the Court adopts this recommendation and denies a COA, Movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts.

## V. Conclusion

For the reasons stated above,

18

**IT IS RECOMMENDED** that Movant's motion, [Doc. 435], to vacate, set aside, or correct his federal sentence be **DENIED** and that a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED**, this  10th  day of  April , 2017.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)